We originally had five cases on the docket. One was submitted, and two that were set for argument have been moved based on Council's request to reschedule the argument. So that means we have a short morning this morning with only two cases for argument today. The first case is an appeal from the Patent Trial and Appeal Board. Council, I have to ask you, how do you pronounce your client's name? DIRTT Environmental Solutions. Okay, DIRTT as opposed to DIRT-T. We went back and forth. Everybody was wondering what it was, so now I know. Thank you. And you want four minutes for rebuttal? Yes, Your Honor. Okay, you may begin. Thank you, may it please the Court. In this case, the Board committed numerous errors that require this decision to be reversed or at a minimum vacated. This morning I'd like to focus on the three most egregious errors. The first is that the only evidence the Board relies on to find Claim 1 invalid is obvious. The obviousness combination set forth in the declaration of their expert witness, Dr. Beeman. But Dr. Beeman repudiated those very combinations when he was crossed on those combinations during trial. Thus, this alone requires... Council, do you concede that Wraith discloses all of the elements of Claim 1 except for the parallel or the horizontal stringers? Yes, we concede that Wraith has all the elements of Claim 1 except for the horizontal stringer limitation in its entirety. So we're only interested in the horizontal stringers, that limitation? That's the focus of this appeal, yes, Your Honor. And it's also, I guess you're in agreement that Claim 1 determines the entire appeal? That's correct, Your Honor. Now you agree below that the horizontal stringer is taught by other prior art references? That's also correct, Your Honor. So it's a combo case? Yes, this is a combination case. It's conceded that all the elements are found in the prior art, but the problem is that there's no reason to combine those that have been proven before the Board. So with respect to Dr. Beeman, I understand that your focus is on his cross-examination, but the Board did walk through the cross-examination and conclude that your comments or what you were relying on in the cross-examination were taken out of context or were not persuasive. So how do we say to the Board that they don't have the right to make those credibility determinations? Well, Your Honor, that's a fair question. If you go back and you look at the transcript of that cross-examination, the Board said the Board dismissed that cross-examination. We said it was taken out of context. But that's clearly wrong because if you go back and you actually read the transcript in each of the cases, I specifically take Dr. Beeman to the very paragraph in his declaration where he opines that a person of skill in the art would make these combinations. And I ask him then, referring specifically to those paragraphs in his declaration, is that what you opine a person of skill in the art would do? And then he was almost surprised. He says, well, I'm not sure that that's what I would do. And he changes his opinion right there on the spot. He said, I wouldn't take the horizontal structure from E.B.H. or E.R. MacGregor and put that into Wraith. What I would do or what a person of skill in the art would do, I would take the strips, connector strips out of Wraith, and I would import those into the other three prior art references. You were asking him if he would incorporate from one prior art reference to combine with another in total. So would you take this exact structure from here and put it over here? And he said, no, I wouldn't do that. But that goes to the question of whether or not in order to make the combination, you have to actually incorporate the entirety of what's found in one prior art reference without any modification. Well, I respectfully disagree, Your Honor. Well, you don't disagree with me on the law. You may disagree with me on what the testimony was about. Correct. But the law doesn't require you in a combo case to exactly combine the specific part you find in A with B. If one of ordinary skill in the art would have been inclined to make a modification. Well, I agree, but that's where this case got all turned around and backwards. Because what the appellant argues is that you would not take the entire structure over with all its technicalities and all of its elements. For example, in EVH, there's the distance channel, which is a metal horizontal structure that has a channel in it that supports and affixes to the glass. We don't say what actually the petitioner says is that you would take that entire channel over to rate. And that's how they get the horizontal stringer that they need. We say just the opposite. We say a person of skill in the art, and this is what Dr. Dix, our expert, testified to, you wouldn't take the entire structure over. You would take the groove. A person of skill in the art would look at that horizontal stringer in EVH and see that there's a groove that supports and affixes to the glass. Well, there's already a horizontal structure in rate. They don't need a horizontal structure. What they would have done would modify the existing horizontal structure in rate to include a groove and a gasket to support and secure the glass. And so the board got it absolutely backwards. The patent owner is arguing that a person of skill in the art would not take the entire structure over. They would take only the groove, and they would actually modify, as you said, a person of skill in the art would do. They would actually modify the existing structure in rate. But the problem is that they disagree with that because that doesn't get them to the horizontal stringer limitation in the claim. But isn't the point that – and what was gleaned from the cross-examination of Dr. Beeman is that regardless of what counsel argues, that Beeman said one of skill in the art would understand how to put pieces and parts together, and the law doesn't require full-on physical incorporation. And that's just it. The law doesn't require full-on physical incorporation, but that's what the petitioner wants because they have to bring that whole physical structure over from EVH or you or McGregor in order to meet the limitation. But that's not what the law requires, and that's not what the motivation that Mr. Beeman espouses requires. Mr. Beeman, Dr. Beeman, he said that the motivation to combine these references is that for EVH, you would want to secure the glass. Well, you don't need to bring over a new metal horizontal member to secure the glass. We've already gone through that. All you need is to put a groove in the existing structure to secure the glass. So that motivation doesn't work. With you, he says, well, you would want to bring over the metal structure so that you could use clips and attach tiles. So what you're trying to do is to modify Wraith, right? That's what the petitioner argued, was to modify Wraith. And the theory was that if you want to support and completely secure the glass panels in the modular units of Wraith, you would bring over from the prior art. And that's just it. They say that that's what you would do, but they're wrong because you already have a structure in Wraith that can support and affix to the glass. All it needs is a groove put in the existing structure. And Wraith has a horizontal structure, so why isn't Wraith anticipatory? Because that horizontal structure isn't a horizontal stringer. It's not affixed at the ends to the vertical end frames like the horizontal stringer has to be. And petitioner doesn't even argue that those horizontal structures are sufficient to meet that limitation. That's why they turned to the other argument. It seems to me that you're arguing that there's another plausible conclusion in addition to the conclusions that were drawn by the expert, right? That's what you're saying. There's another way of doing this that's plausible. Not just another way that's plausible, but there's… A different way. And not just a different way. And it's important because remember… What's the difference? I mean, you're sort of arguing another, an alternative to what the experts argue. You're arguing that you bring over just the groove, not the entire mechanism. And that's another conclusion. That's your conclusion. And let's say, let's assume that your conclusion is reasonable. We have two reasonable, plausible conclusions here. Okay. How does that square with the standard of review that we have with substantial evidence? We've got two outcomes. Both are reasonable. That's – once we're in that situation, we find substantial evidence. Okay. Well, first of all, we disagree that it's reasonable because it's like if you have a claim that requires a car with an automatic sliding door. And they look at the prior art and they say, oh, there's prior art over here that has a sliding door with a window in it. And the door in the claim doesn't have a window in it. Well, oh, we would bring the automatic sliding door over because now we have a window. Well, that doesn't make sense. It's not reasonable. They wouldn't bring the whole door over. They would just bring the window over. And that's what they've done here. They just need the groove, but they want to bring the whole structure with it, which that's not reasonable. Second – Well, it is reasonable. It may not be practical. Well, but we're looking at what a person of ordinary skill in the art would do, and a person of ordinary skill in the art would be practical. If it is reasonable, and we're not talking about a whole door. We're talking about a stringer with a groove in it. It seems to me it makes more sense for proceeding to say, I'll just take this strip that's got a groove in it already and move it over, as opposed to saying, I'm just going to move the groove over. Well, once again, Your Honor, remember Wraith has the vertical frames that already has the exact same groove in the vertical frame in Wraith. Right, but Wraith itself says that it can be combined with other systems in order to improve upon even what it explains or describes. I respectfully disagree. I haven't answered Judge Reyna's question. Can I answer his and then yours? Go ahead. So, Judge Reyna, going back to your question, the other reason is that Wraith says you want to minimize the number of components and so forth. And to bring over that other structure, you're going to have to bring over additional components, which makes it more complex, more time-consuming to manufacture, more difficult to manufacture, more time-consuming to assemble and reassemble. And that's contrary to the expressed teachings of Wraith. Judge O'Malley, turning to your question, which has just slipped my mind, would you mind re-asking it again? That Wraith itself says and it explains that its system can be combined with features of other systems. Well, Your Honor, I respectfully disagree. The precise language in Wraith says it is compatible with other existing partition systems. And so what that means is that if you have an existing partition system, you can take the Wraith system and you can build off of that and it's compatible. It does not say that it is that you can take parts of an existing system and use it to modify Wraith. That's not in Wraith anywhere. It just says it's compatible with, meaning it can be used next to or in conjunction. But what do we do with the board's factual finding that one of ordinary skill in the art would have recognized that you could import these channels from EBH, for example, in order to improve the structural support in Wraith? Well, I don't know that the board actually made that factual finding that it would improve the structural support. Well, it did. It did. Yes. Okay. Well, let's assume that it did. But even then, even if you would get to, okay, there's a motivation to make the combination. That motivation, that combination is weak at very best because it was repudiated in the cross-examination. The motivations to combine are not directly linked. There's a logical disconnect. And then you get to the secondary considerations of non-obviousness, which the board entirely dismissed, making severe errors of law and fact. For example, on commercial success, they required corroboration. There's no corroboration requirement for commercial success. They required market share. That's also an error of law. I see that I'm into my rebuttal time, which I would like to reserve. Can I just ask one question? Go ahead. There was additional briefing on the SAS remand issue. Yes, Your Honor. And my reading of the additional briefing was that the other side really is not eager to have a remand. You would like a remand. But my understanding of your brief was that it looked to me like your remand was really conditional. That is to say, it looked to me like you were hoping for a victory here. And if you won here, then that was going to be useful to you on a remand. Let me ask you this question. Assume that you lost everything here, a complete loss. Do you still want to have an SAS remand? Yes, Your Honor. We do. And how do you get there? Well, Your Honor, the non-instituted claims continue to be valid, even if we lost here on claim one. But they're all on dependent claims. I'm sorry? They're dependent claims, correct? Yes. So wouldn't they rise and fall with claim one? No, Your Honor, because they're dependent. Why not? At the beginning of your argument, I asked you whether claim one determines the entire case, and you said it does. Well, it determines this case that's on appeal to this court. Well, if we rule against you on claim one and find it to be obvious, then— You have dependent claims on appeal here. Yes, the independent claims on appeal here today, they rise or fall with claim one. The independent claims that were not instituted are not in this case and do not rise or fall with claim one. They have additional limitations that aren't addressed in this case that render those claims valid, which is why they were not instituted. My problem is that both SAS and we have said that the problem with the partial institution is a violation of the Administrative Procedures Act, and the portion of the Administrative Procedures Act which says that the PTAP acted beyond its statutory authority. The only remedy for that in the APA is to set aside the determination. So we can't choose to decide some of it and not decide others unless we find that there's no prejudicial error in doing that. And so that's my problem with your saying you want us to go ahead and do these but then go back and do the others. I mean, it seems to me it's an all or nothing unless you concede that there would be no prejudicial error to you if we invalidated the patent on these grounds. Well, I don't think there would be prejudicial error to us. If claim one was invalidated on these grounds and the dependent claims that are currently on appeal were invalidated, that would not be prejudicial to the validity of the non-instituted claims. And this court in two cases, in the Medtronic case at 2018 WL-276-9092, decided last month, and also in the Bordeauxian text case at 2018 WL-297-9928, also decided last month. In both of those cases, this court ruled on the appeal before it, and then after ruling on the appeal before it, remanded. Let's get back to Judge Cleaver's question because I kind of share his view that you seem to want to condition any remand that we have on any type of victory you have here. And when I'm reading your arguments in your supplemental briefing, it seems like you're doing that. You're assuming, or at least your arguments are based on an assumption that you're going to win at different points. And if you win there, that means that you have a chance on the uninstituted grounds. No, Your Honor. If you look closely in the brief, it says, regardless of what happens in this appeal, we would like a remand. Now, we believe that the boards should be overturned and we should win on appeal. Where do you say that? In the very beginning, I do believe. Right. And part of my problem with what you said there is you said because whatever we say here would sort of give them guidance with respect to the other claims. And that, to me, sounds like you were asking us for an advisory opinion. I believe it's a little bit different than that, Your Honor, because it's not that we're asking for an advisory opinion on the claims that were non-instituted. But it's a natural consequence that this Court's ruling on Claim 1 that's in the current appeal will obviously inform the analysis of the other claims. Let me ask you this. And I can't speak for the other judges, and I'm not even sure what my view of it is. But assuming that we thought that it was an all-or-nothing proposition, you either get a remand right now and the current decision is vacated, and they get to remand, and you get a remand, and they go back and address all the claims. Or we go forward and decide this and only this, and there's no remand. If you had to choose between the two, what would your choice be? I believe we would choose a remand, Your Honor, so that we could get finality and estoppel provisions. You mean remand on all the issues? Yes, so that we could get finality and the estoppel provisions with the non-instituted claims would then come into play with regard to the non-instituted claims when a new final written decision was issued on all challenged claims. Okay. Thank you. We'll give you three minutes back for rebuttal. Thank you, Your Honor. You're welcome. Can we start with that last point, the SAS point? Yes. So what is your view? Can the court sort of partially decide whether or not a final written decision that was outside the statutory authority of the PTAB was right or wrong? Can we do that kind of partial decision making? I haven't looked at that particular question. But I think that in this case, I think that in the supplemental briefing, both sides were consistent that we have gone a long way in looking at the validity of Claim 1. And as we've seen in this case, We've had a lot of cases like that before us, and the two cases that your friend on the other side cites, both of those cases were situations in which the decision had already been rendered before SAS ever issued. So I find those to be different. But in all the other cases that we've had, we've been either remanding or not remanding. We either go forward or we don't go forward. And, you know, as petitioner, I assume that you would still want to attack the other claims on which there was no institution, right? That is correct. So, I mean, so what you're saying is you want the best of both worlds. You want us to affirm this decision, and then you wouldn't be stopped as to all those other claims. This case has a unique procedural component where the patented issue is also in a reissue at the moment, where independent Claim 1 and all of the non-instituted claims stand rejected, not only based on the grounds in the IPR, but for independent reasons. So we have this parallel proceeding that has been— Well, that's all the more reason we shouldn't be issuing something if it turns out that it's really just an advisory opinion. But I think— You've been on different grounds, as you said. Yes. So the reissue before the Patent Office is currently looking at the IPR grounds and has those as grounds of rejection as well as additional separate grounds. And those claims are also currently amended. Let me just get clear in my mind what your position is on this, because your original position was that they waived any claim to raise it. Correct. Which would have suggested to me that you were against a remand. Yes. And in your response to the additional briefing, you said you want us to decide what's in front of us now. Correct. But you didn't actually say whether you actually wanted a remand or not. Right. We think that the best course of action— What's your position? Are you asking for a remand? Yes or no? We are not asking for a remand. We're asking for a decision. So are you opposing a remand? Yes. And we are asking then for a decision on Claim 1. And then at the district court, we believe that— So you're taking the position that you want to win here but not be stopped with respect to all the other claims in the petition. That's exactly what the problem is, and that was identified in SIS, right? Yes. And because we have this unique procedural history of the reissue, we would then let that reissue finish. We would ask the district court to let the reissue finish to see what happens with those claims. The fact that you may oppose a remand doesn't mean you're not going to get one, because in the cases that have come down thus far, if either party asks for the remand, they're getting it. So I just wanted to clarify in my own mind where you were because your briefing, you started off saying they waived it but suggested you didn't want a remand. We asked you for a briefing. You came back and said, argue the case here, but you didn't tell us what you wanted on it, what you were on a remand. You're now telling us that you oppose a remand, correct? Correct, because we think that— In cases of opposing a remand for the uninstituted claims. I mean, SIS is pretty clear on that. Yes, Judge Rainey, I understand. I think that we have a unique procedural posture in this case. No, aside from that posture. Aside from that posture, I agree looking at the cases that this court has issued, that this court, when there are uninstituted claims or grounds, those cases are being remanded. You're hoping that will influence the reexamination of the reissue. I'm sorry? You're hoping that we can influence the reissue by endorsing the PTAP's decision. Yes, I think that this case is fully briefed. It would be like if you had a case pending in a district court someplace, you'd like the same thing, right? Correct. It's not unusual that you have cases where one is related to another and you want an adjudication, and if you win, you're going to use it, and if you don't, you won't. Correct. I mean, for the efficiency of all of the matters, we have a district court case in the Northern District of Illinois that has stayed. We have the reissue proceeding, and we have this proceeding, and the parties have come a long way, and I understand, Judge O'Malley, that that is the situation in all cases, but here, there's only one independent claim. If we can receive a ruling from the federal circuit on where we stand with claim one, I think that would go a long way to resolving potentially all of these matters. How do you deal with the 706 of the Administrative Procedures Act, which is what the Supreme Court and our court have said it was the basis for the holding, that 706 says that our remedy where a court has acted in excess of its statutory jurisdiction, authority, or limitations is to hold unlawful and set aside the agency action, findings, and conclusions, unless we can conclude that there was no prejudicial error in their acting outside their statutory authority, and how can we reach that conclusion? It would just be on the basis of efficiency and looking at this case. The other side says it's not prejudiced. I'm sorry? The other side says it's not prejudiced, and you claim they're not prejudiced. If they are not prejudiced? Or you're not claiming prejudice. That is correct. So assume that we remand. Neither side's claiming prejudice, so. Assume that we remand. What's your position? That we should remand the entire case or just decide the merits on the instituted claims, on the claims that are before us or the arguments that are before us, and then remand on the uninstituted claims? That's correct, a narrow remand. You'd rather we make a merits decision now and then? Yes, and I think that would be helpful. So, for example, have another case at the PTAB where shortly before they were going to issue the final written decision, S.A.S. There's a majority, though, that for the basis of your argument, that the reason we should take that approach is to render some form of advice to all these other proceedings. I mean, we're not in the business of giving advisory opinions, and that's what you want. Well, I don't know that I would see it as an advisory opinion. You can have a final decision for what is framed before the court now for the independent claim and then the dependent claims here that Dirk agrees rise and fall with that independent claim. And then when you go back to the PTAB, they are going to be able to have a much more efficient proceeding, knowing the decision from this court on claim one and only then focusing on the narrow issues that would remain on the dependent claims. Okay, let's get to the merits. What is your response to your friend's argument on the other side that you only proposed this bodily incorporation of EBH or the other references into RAFE and that that's not workable? We did not propose a bodily incorporation. We applied the law of obviousness, Supreme Court's KSR opinion. We provided substantial evidence, including expert testimony, on why a person of ordinary skill in the art would have combined. We have three different grounds here. You have RAFE plus EBH, where you are creating an improved way of supporting glass. These are modules that you move in and out to different positions, and so having an improved way to support the glass is the evidence, and that was the PTAB's ruling on that. With you, you have a system of holding tiles in a snap-in arrangement and for supporting furniture where you can have a sliding mounting bracket, and that is something that a person of ordinary skill in the art would want in one of these movable systems. And then you have in the McGregor system holding televisions and other high-tech components, and they have specially designed horizontal supports. So this is a case where it's easy to visualize how you could take those particular components and incorporate them in RAFE, but it isn't a requirement. We never said it's a requirement. But Dr. Beeman's declaration does seem pretty broad in terms of saying I'm putting this piece into this piece as opposed to saying you would do that through modification. I guess that's where he tried to go on his cross-examination, but why isn't his declaration inadequate? Because he didn't actually address the fact that there would have to be modifications. Well, I don't think there's a requirement that you need to have a blueprint of how you would take a piece from one reference and put it into the other and what the modifications would be. He was looking at the teaching of the references as a whole and that a person of ordinary skill in the arts would want to have that additional functionality in the RAFE modular system and would be able to incorporate it. These are very simple technology of taking a horizontal structural component that is going to hold various kinds of components, whether you're talking about U or EVH or McGregor, and those references also teach how to use a nut and bolt type of connection between the horizontal and the vertical. So I don't think there's a requirement that in an expert declaration you need to get to, here are the exact modifications that would need to be made. He was looking at the teaching of the references as a whole and a person of ordinary skill in the arts would readily be able to make that combination. What would he say would be the motivation to do that? Yes, you can envision putting one thing into another, but why would you bother if you've already got a self-contained system that works? For example, RAFE has a solid panel and it has a glass panel. McGregor, for example, has a horizontal support that is holding televisions, audiovisual components, different items that you can put at different locations on the wall. So, saying a person of ordinary skill in the art, looking at the language in RAFE of wanting to have various types of partition systems. For example, when you look at Figure 13 of RAFE, you can see how they have set up the room. In this teaching, you can set up the room differently. You can move the door, you can move the glass. Looking at McGregor, you would say, I want to have a television or audiovisual and it shows how somebody would do that in a modular system. And so that is what he has as his motivation to combine. A person of ordinary skill in the art, looking at one of these rooms, would want to have that audiovisual component. When you're making the combination, you aren't limited to a cut-and-paste world or a blueprint world. You're looking at the teaching as a whole. But it is easy to visualize that you would take, at a minimum, one of the options. You would take what it is in McGregor that already has those custom holes for holding those components. Right, that's assuming that you find something inadequate in RAFE. I mean, we have plenty of cases where you have a prior art reference that, on its own, serves all the purposes and functions and does so appropriately. You wouldn't look outside to look for something else just because it happens to exist. But RAFE doesn't have a teaching of how you would snap in tiles as you have in U, or how you would have a sliding furniture mount as you have in U, or how you would mount the audiovisual and other high-tech components as you have in McGregor. Or, in EVH, when you have these walls that you're moving in and out, RAFE does have the channels on the verticals, but that's it. And the evidence that was provided, and what the PTAB found, is that EVH provided an improved way of holding that glass, so you had channels all the way around. And, as my friend representing DIRT said in the RAFE reference, it has an inter-fitting connection that they say is not a fixing, so you would want an EVH to have that nut and bolt connection, so that when you are taking these walls and moving them from point to point, it's a more secure system. So, there is clear motivation to combine substantial evidence to support the combinations in the case. And I think that a question, Judge Reyna, that you ask of, if what DIRT has is a plausible way of making the combination, and we don't disagree that that would be one plausible way. What they say could be a plausible way. There are a lot of ways that a person of ordinary skill in the art could make the combination. The point is that it isn't just limited to what they have. At a minimum, somebody is going to take the way McGregor and you and EVH teach, holding those components in place. At a minimum, they would do that. They would look at a lot of others using their skill and creativity to do that. So, this is the epitome, at least to us, the epitome of a case where under substantial evidence standard, and you have various reasonable alternatives. What the board came up with for the three combinations is definitely a reasonable alternative supported by substantial evidence in this case. What's your response to your friend's argument that we're not under a substantial evidence review, we're under abusive discretion because what we're looking at is the board's credibility determinations as it relates to Dr. Beeman? I believe we cited a case on that point. Yeah, we cited on page 24 of the red brief the Warsaw Orthopedic case, noting that it rejected arguments that contest the weight the PTAB afforded to the record evidence and confirming that this court may not re-weigh facts already considered by the PTAB. Well, a credibility determination has factual components, doesn't it? When you're trying to decide whether a witness is credible or not, you have to say why. Yes. They were handshook, they were shaky, they were inconsistent, so there have to be some factual components underlying a conclusion, right? Yes. It's clear that facts are measured for substantial evidence. Correct. Perhaps the conclusion, if you say, if we were to decide, for example, that the factual underpinning of a credibility decision were incorrect, that there was not substantial evidence to support that credibility decision, we would probably say the decision was arbitrary, capricious or not, and otherwise in accordance with law because there was no factual underpinning, that the facts themselves would be measured by substantial evidence. Yes, correct. And I would also note on the issue— because it's always confusing, but it's clear in our case law, when in bank to do it, to say facts coming out of the patent office are measured for substantial evidence. If the facts don't add up to a conclusion, the conclusion has to be incorrect, right? If the facts won't add up to it. And then you have to decide what label you want to put on it, arbitrary, capricious or not, otherwise in accordance with law. I would note— Typically, this court, all courts tend not to use the word capricious because we don't like to treat the patent offices being capricious or even arbitrary, shall we say, not in accordance with law. It's a polite way of saying it. And I would note on Dr. Beeman's testimony when we had the hearing, it was a lengthy hearing. We had on PowerPoint slides presented by DIRT the testimony they were talking about, and on my rebuttal, I walked through that Q&A and showed why it is that, based on the narrow questions that they were asking, which was talking about a particular way of bodily incorporating where you changed nothing in Wraith and you added something from EVH or you added something from you or you added something from McGregor. That was the framing of the question, is you aren't changing something in Wraith and you're just adding. His answers make complete sense. Like, no, you wouldn't, in the combination, take what is in McGregor and put it in the glass panel. He was looking at additional functionality that you would have in that system. I'm not going to have the glass. I'm hanging a television there instead, so I'm using the support or how a person of ordinary skill in the art would modify it to have that horizontal support or stringer between the verticals in Wraith to support the television. Okay, we understand your point. You're way out of time. As I said, I'll give you the three minutes back, even though you were way out of time, too. I'm trying to keep it even. Yes, thank you, Your Honor. Thank you, Your Honor. A few very quick points. First, on the SAS Institute issue, this court's PGS case gives this court authority to, found that this court has jurisdiction to render a decision on an appeal, even when there were non-instituted claims. So we believe that the court has jurisdiction to do that. And under Section 706, this court would be only vacating the portion of the PTAB's finding of non-institution. So that's how you can deal with the Section 706. Turning to the merits, Your Honor noted that Dr. Beeman's declaration, why is it not deficient? Because it doesn't say how you would incorporate it. Well, that's a particularly good point in this case because the claims require it to be incorporated and to be affixed. And on the one hand, the petitioner says, well, it wouldn't require any new parts. But then on the other hand, you have to incorporate new parts. As counsel just said, you need nuts and bolts and brackets and so forth to do the affixing required to meet the claims. And so they're trying to have it both ways, saying, well, you wouldn't need new parts, but then we have to have new parts to get the benefits. And so they're completely inconsistent. Counsel also talked about McGregor and how you would import the horizontal structure from McGregor to hang accessories and components. But when asked once again on cross-examination, Dr. Beeman said, actually, I didn't focus on that particular part of the Wraith patent, but it looks like you can handle accessories with Hook 77 and Support Bracket 77. And he also said, I'd have to go back and look at Wraith more carefully about the accessory part, which I overlooked. When he rendered his opinion, he didn't even know or understand that Wraith already allows you to support the accessories and things that they say is a motivation to combine McGregor. The declaration is just completely deficient, and that was exposed in the cross-examination. And about whether to believe the declaration or the cross-examination, the court of claims held in the Kowal case, quote, we have emphasized the inherent superiority of testimony subject to cross-examination to that given in an ex parte situation. And in that court, in that case, the court did exactly what we're asking here, to find that the board erred in believing the declaration, which was written in the office of the attorney with review and revise and no cross-examination, over live testimony where he gave it in his own words, where he was subject to the crucible of cross-examination, where we could really test the veracity of what he said. And because the board didn't have the opportunity to observe his demeanor and so forth during testimony, they were both submitted on paper, it's absolute error for them to credit the declaration over the cross-examination testimony. I see that I am out of time. If the court has questions, I'd be happy to respond. No, thank you. Thank you.